All right, Mr. Poussin, we see the top of your head on the screen. Can you hear us? Yes, I can. Okay, great. Thank you. All right. Counsel, whenever you're ready. Thank you, Your Honor. Jean Reese, USC Immigration Clinic, Pro Bono Counsel for Petitioner Abdumalikov. I'll reserve four minutes for rebuttal. Here, the board has determined that Petitioner was persecuted and tortured, suffered harm rising the level of persecution and torture by the government of Uzbekistan, that he received that persecution and torture while he was imprisoned for 15 days based on his possession of a banned religious text. It is undisputed that the banned religious text was written for the Shafi'i school of Islam, where Mr. Abdumalikov practiced the Shafi'i school. And it is undisputed that when Petitioner Abdumalikov was released from the imprisonment, the Uzbekistan government forbid him from attending the mosque, forbid him from praying in public and forbid him from attending social gatherings. But didn't he testify that they did not forbid him from practicing his religion? The testimony is unclear because we're in a situation where there was a double negative. The actual quote was, so they did not prohibit you from practicing Shafi'i Islam. Is that correct? It's a yes or no answer. And I'm referring to page 400 of the record. And the answer is no. So if the last question is, is that correct? The response is no. But either way, if you, you know, so I think it's unclear. But the case law is pretty clear. Shingvi Ashcroft says, you know, having to hide your practice in your home, you know, would constitute persecution on account of a religious basis. So the question is, if this court determines that religion is a central reason or even a reason, so whether it's Petitioner's Shafi'i religion or the imputed kind of extremist Shafi'i version of that religion, then the court should remand. And that's the end of the inquiry. So when did you first raise imputed religious views? So the first time I saw it was in your reply brief. Was that argued before the agency? It was on page 110 of the record in the BIA brief. The BIA brief states that the government kind of suspected this radicalism based on the Shafi'i sect. And so the idea that even if the government's mistaken, that still, they were mistaken about his extremist religion, that's still a basis to find that there was a protected ground here based on religion, and even if it was a mistaken, if the belief was about religion, even if it was a mistaken belief. So again, that's page 110 of the record, that that's argued there. So in this case, regarding whether or not Petitioner's actual religion was the reason, the court can find it was the actual reason or the imputed religion. Both of those would require remand in the end of the inquiry. Even if the court said, okay, well, it was clear he didn't possess this book, there is a regulatory presumption of future persecution based on past persecution. So the board here never found that past persecution presumption. But the board determined that he had practiced his religion for 20 years without incident, and that was part of its conclusion that the persecution he experienced was because he had a banned book, not because of his religious practice, and that he said he never read the book, he didn't know what it was about, didn't know what was in it, and that he wasn't prohibited from practicing his religion. So they found no nexus between the persecution he experienced and his religion. That's correct. But the record shows that he practiced his religion in private in the home, that it was never written down. He testified that – Well, then that begs the question. You're saying he couldn't practice his religion because he couldn't pray at the mosque and he couldn't pray in public, and now you're saying he never did those things anyway. He just practiced his religion at home. So how was the practice of his religion affected because he was persecuted for having a banned book? Well, what I'm saying is the record doesn't support that he was openly practicing this religion and went 20 years without being harmed. The record is that he attended a mosque that was a different type of religion. And the fact that he wasn't – and so he comes to the attention of the authorities because he has this Shafi book that has been banned publicly in his possession at a café. So the fact that he is tortured and persecuted because he's possessing this religious text shows that religion was a central reason of that persecution. But not his religion, right? You're saying it was imputed religion. But so the issue is whether he has a reasonable fear of future persecution. And the agency, we would have to determine whether there's substantial evidence for the agency's conclusion that there's no nexus between his past persecution and his religion, given that he practiced his religion for 20 years and that he could still practice his religion. By his own account, he could still practice his religion. But if there was no nexus to religion, why would he be prohibited from going to a mosque? Why would he be prohibited from praying in public or from attending social gathering? That evidence shows that motive of the persecutor was religion. And so it was his Shafi religion that he said was based under suspicion. He testified it was a suspicious school. And we have country conditions evidence that talk about these various kind of non-recognized schools of Islam thought that many other people are arrested and tortured for, even if they themselves are not peaceful chats and conversations about it. And that's it. The potential obstacle for your client is that we have to review this for substantial evidence, right? And it seems like the evidence is a bit mixed. And maybe actually the grand scheme of things maybe actually favors your client's case. But we're not reviewing this to know, but we're looking for substantial evidence. And it seems like there's some evidence that it was the government viewed him as the book. It's banned. It's radical. Radicalism, not necessarily religion. So that's one issue here is the standard review is obviously very deferential when we review these things. Correct, but I don't think that there's any – in this case, he wasn't arrested for stealing or for possessing a book on nuclear physics. He was arrested for a religious text. He was accused of belonging to a religious group. He was tortured and called a Wahhabi, a jihadist. So I don't see how the substantial evidence shows that the motivation was this religion, this religious text. I guess the kind of analogy you'd be hearing in the United States, if someone was arrested, investigation for being associated with ISIS or something like that, the United States government would say, no, this is about radicalism. Even if the person was motivated subjectively by their own distorted view of religion, we're looking at radicalism, not religion. So I assume that would be the case here is that the government there would say we're just banning this book because it promotes radicalism, not necessarily religion per se. I don't know if I buy it, but I mean that's kind of what we have to look at. And I would direct, Your Honor, to the country conditions State Department report on religious freedom from 2022. And that report by the State Department talks about prohibitions on religion, restrictions on practice, restrictions on registration, restrictions on who may teach religion, and also talks about these banned religious texts, all in the context of religion, not in the context of some other threats or some other basis. So I don't think that one can divorce the religious text from religion and say that it was just based on a book. But didn't we do that in – we have two cases that are somewhat difficult to reconcile, but there's – and again, I don't know how to pronounce them. Gao and Gu, there's Gao, G-U-O, versus Sessions and Gu versus Gonzalez, very similar with the home church practice of religion, Christianity in China. And in one we found there was past persecution, in the other we found there was not. And the distinction was whether the person was prohibited from practicing their religion. And one, where the person did not suffer persecution with a nexus to religion, they were disseminating Christian tracts. But they could still afterwards practice their religion. And the other, they couldn't attend their home church. They couldn't practice their religion. So here I think the – applying those cases, it would seem that because he could still practice his religion, that he would follow. Also, Judge Gould, if I may ask you a question, under the substantial evidence test and our circuit precedent, to give you relief, wouldn't we have to say the record compels relief? Yes, and it does compel relief. And there can be more than one reason. They could suspect that he was some sort of militant radical. But they could also have religion be a central reason for that. And regarding Guo V. Sessions, the case in Guo, they similarly here accused Guo of kind of this political opinion where he was inciting the overthrow of the government based on the religion. So there's a similar connection there. And in Guo V. Sessions, part of the determination that the harm rose to the level of persecution was this permanent restriction on the practice of religion, which was constituted religious persecution. We already have the harm constitutes persecution. It's just whether one of the central motives, or even under a withholding of removal, a motive, a reason had to do with religion. And the evidence compels it not only through petitioner's testimony, but also through the country conditions that talk about these blacklists, these arrests of people based on religion. And another basis for this is this particular social group who's accused of extremism-related charges. Country conditions show that the government has created ways to identify these groups, singled out groups, put these groups on lists. That there are these kind of social governance mahalas that report on the activities of people in their communities, whether it's related to extremism. So that's also a basis, is that particular social group. And the BIA rejected it on particularity? On social distinction, not on particularity. The only reason the board rejected it was social distinction, and they just said there's no social distinction. But they don't say why. They don't explain why. So if this court, you know, we have provided evidence that it does show social distinction. But the IJ said why, and the board looked through the IJ's decision. I mean, the IJ's decision was more fulsome and talked about you can't distinguish these people from anybody else because there's no definition of what this means. But that would be particularity. But also under social distinction, people related to extremism related charges. It's clear in the country conditions, the Human Rights Watch report and the State Department report on religious freedom, that there are charges that target people. That there is banned religious texts. And Diaz-Renoso and also Diaz-Torres say that in determining whether or not a group is socially distinct, you can look to government rules. And you can look to discriminatory laws and policies that show a group is perceived as distinct. And that's what we have here. We have evidence of rules targeting extremists that are based on these kind of religious ideas. We have people reporting on extremism. We even have the government in certain places prosecuting, torturing pretrial of people suspected of these crimes. So there is social distinction. And the immigration judge's explanation why there isn't social distinction is, well, you don't know if they could be Muslim or a Jehovah's Witness, for example. You know, the country conditions talk about most extremisms that are targeted are Muslim. That there are issues for other religions not being registered, not being able to practice publicly. But the torture and the ill treatment of individuals are largely people who are suspected of belonging to radical groups. And, you know, some of that record evidence would include 709, there's laws against extremist religious groups. 720, Fat Mahalos, which are community governing bodies, report on activities of suspected extremist groups. So they are distinct in society. And regarding kind of this idea that there was just kind of a mistake regarding the book and Petitioner was released, and that his family hadn't been also harmed or interfered with their practice of religion. Petitioner provided in his motion to reopen new evidence that wasn't previously available, that his father was called in by the same authorities, interrogated for four hours, asked about Petitioner's whereabouts, and he also was restricted in his practice of religion and was asked about religion. So that's further evidence that would go directly to Nexus, that would show a reasonable likelihood that he is eligible for asylum and withholding. And the board abused discretion in denying that motion to reopen. One of the reasons the board and the immigration judge state is his family isn't harmed. And here we have evidence that now his family is under interrogation and inquiry and restricted. Another reason why this court should remand is because under the Convention Against Torture, you don't need a nexus. We have past torture, significant past torture, because of the possession of this book. He was released on parole with conditions and left the country. There is evidence that the police were looking for him in his neighborhood. The police said that if he left the country, it would be bad for him. Country conditions show that there is pretrial detention and torture. The idea that this would just be a lawful sanction, again, you have the government torturing him for this religion, him leaving 19 days later, and then the fact that if he returns, he wouldn't again be tortured because it would somehow be a lawful detention is contrary to the record evidence. You're over time now. All right, so we'll hear from Mr. Buesen. Good afternoon, Your Honors, and may it please the court. My name is Jesse Buesen, and I represent the attorney general. I wanted to address a few points made by my colleague to start. First, she stated that it's undisputed that this book is tied to the Shafi'i school of Islam. I'm not sure that is borne out by the record. The petitioner certainly stated that he believed that the book was consistent with Shafi'i beliefs, but there's no other record evidence indicating whether or not this book is a Shafi'i religious text or whether it is related to another school or sect of Islam. Setting that aside, what we have in this case is petitioner and his family were able to practice their religion peacefully for a number of years, and it was only due to his possession of this banned book that he was brought to the attention of the police. The police interrogated him. They harmed him, but it was a count on his possession of this book. It was not on account of his religion, which is borne out by the fact that his family had never had a problem before this. And in fact, when the police found out that the book was a gift and that he didn't espouse these beliefs, they let him go. They let him go with restrictions. It's not clear from the record if those restrictions were intended to punish him for his religious beliefs under the Shafi'i sect or if it was punitive or if there was any other reason for the government to have done this. And petitioner signed Guo, and the government attempted to distinguish that in its brief. In Guo, the petitioner in that case was targeted purely because of their membership in a house church. And when they were released, they were prevented from practicing their religion at all. They were not permitted to continue to practice in a house church or separately. Here, as your honors recognized, the petitioner was allowed to continue to practice. He was just not allowed to attend these public prayer meetings at a mosque that was not part of his religious sect. But with respect to the record evidence regarding conditions in Uzbekistan, it's simply not specific enough to petitioner's case to be able to glean any sort of idea of what would happen to him. There is a lot of discussion of treatment of extremist groups. There is no specific discussion of the Shafi'i in particular. There is a lot of discussion of general conditions, and that in and of itself is not enough to sustain his burden to show future harm, that it is more likely than not that he will experience future harm. My colleague pointed out or argued that the government seeking him out or targeting people for religious extremism can, in and of itself, create the social distinction necessary to establish a particular social group. I would cite Vilaga Sanchez v. Garland stating that the social group has to exist independently of persecution, and the persecutor's perception enough is not enough to make the group socially distinct. It may be relevant to determining a group social distinction, but it is not alone sufficient to establish that. What would be more relevant is, as this court found in Cordoba v. Holder, is general social perception, which can be assessed from the perspective of the society in question as a whole, the residents of a particular region, or membership of members of different social groups. And we don't have that evidence here. All we have is evidence that the government has laws targeting religious extremist groups from across the board, and simply being accused of being a criminal is not sufficient for this group to be socially distinct. Regarding past torture, I wanted to note under Dawson v. Garland, even when there is past torture, there is no presumption of future torture. It is a factor that can be considered, but the fact finder has to consider all of the relevant evidence when determining if there is likelihood of future torture. So is that your response to counsel's argument with respect to the cat claim? Yes, Your Honor. At least to the extent that to the extent she argues that the past torture is dispositive of a determination that it is more likely than not that he would be tortured in the future. That is not the law of this court. Moreover, the facts show that he was released after it was determined that he was not an extremist, and that is strong evidence towards showing that he is not likely to be tortured should he return to Uzbekistan. So not being allowed to attend a particular mosque or attended social gathering, that is not torture, right? Those were the restrictions he was received. Correct. I would argue that it would not qualify as either persecution. It would not qualify as persecution. It certainly would not qualify as torture. So it seems like a critical issue, at least in my mind in looking at this, is whether substantially evidence supports the agency's nexus determination. The agency concluded he was arrested and persecuted because of a banned book, not because of religion. And counsel on the other side makes a pretty compelling argument that the book was about religion, or at least we believe it was about religion. And so there was really some religious motivation here. How do you respond to that? Well, I would note Judge Lee's statement that this would be similar to a situation where somebody is arrested and detained because of suspicions that they support ISIS, which would not in and of itself be persecution on account of a religion. It would be persecution on account of suspected terrorist ties or extremism. And again, here, the fact that his family was able to practice their religion without any sort of interference strongly suggests that this was not about his religion. This was about the perception that he was an extremist. As the police said, they accused him of being a jihadist or a Wahhabi. They didn't make any sort of statements about you are practicing a sect of Islam that we disapprove of or that we view this sect as being extremist. Can you address the motion to remand his father's affidavit? Why isn't that relevant to the nexus question? It isn't ultimately relevant because the information, the affidavit, the affidavit doesn't make clear that the father is being targeted specifically because his religion or that if the petitioner returned that he would be targeted on account of his religion. He was questioned. The father stated that he was questioned by police about his son, that his son is on an international watch list, but they did not explain why he was on some sort of watch list. They didn't indicate that it was because of his religious practice, because they expect suspect him being an extremist, whether it was because he had left without reporting in and meeting those reporting requirements or for any other reason. The questions to the father about his religion fail for the same reason, I think, that it fails for the petitioner because these restrictions that were placed on him were didn't prevent him from practicing his own religion and it would not rise to the level of persecution. And in terms of showing a connection to the nexus to his religion, again, it's not clear why these restrictions were placed on the father, if they were placed on the father because they didn't wish to have him interacting with other people in public events. If it was purely punitive, the evidence just is not sufficient to meet the burden to establish prima facie eligibility for leave and reopening, and it certainly is not sufficient to show that the board abused its discretion and did not. I mean, the new evidence may not be dispositive of the nexus question, but it does add a few more details. I think the statements are a little bit more clear and emphatic than what was in the record before for what the petitioner had testified before the IJ. And that raises the question of whether this sort of incremental addition of information is sufficient to meet the burden of establishing reopening, establishing prima facie eligibility for relief such that reopening would be warranted. I would argue that these statements from the father without any further information, without any further knowledge of him regarding the motivations of the police in this case are not sufficient to meet that burden. Do you agree with your colleague that petitioner argued imputed religion before the agency? I would have to refer back to the record. I do not believe that came up at any point before the reply brief. But I think it would still fail for the same reasons that the claim would fail with respect to persecution on account of religion. There's just not sufficient evidence to show that religion or an imputed religion was that there was any nexus that the harm that he experienced had a nexus to his religion, whether his actual religion or any imputation. And regardless, even if they imputed an extremist religious opinion to him, once they learned, once the police learned that he was given the book as a gift and didn't espouse those beliefs, they let him go. And that is evidence that the police no longer would no longer impute that opinion to him. Right. If the court has no further questions, I will cede my time and rest on the brief. All right. Thank you. Thank you. Mr. Reese, if you would like, I will give you two minutes on rebuttal. So Petitioner did argue imputed religion in the opening brief on page 19. Petitioner says this is the accusation of belonging to an extremist sect and being interrogated about religious practices and beliefs. This is direct evidence that the persecutor's motivations were based on Mr. Abdumalakab's religion or perceived religion. So that was raised to the board. It was raised in our opening brief. And Canis Agovia highlights that imputed religion or imputed religion is a protected ground. So even if the government was wrong about the perceived religion, that would constitute nexus to a protected ground. And I'll quote Zhang V. Ashcroft regarding this practicing in private and not being restricted. And this is on page 719 to 20. This court has held to require Zhang to practice his beliefs in secret is contrary to our basic principles of religious freedom and the protection of religious refugees. So this is in support of substantial evidence showing religion was a central reason or at least a reason for the persecution. Thank you. Thank you. Counsel, thank you both for your arguments this morning. And this case is submitted and we are in recess until tomorrow morning. All rise. This court stands in recess until tomorrow morning.
judges: GOULD, BADE, LEE